UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| **MICHAEL LAUGHLIN**, *on behalf of himself and all others similarly situated*,<br><br>    *Plaintiff*,<br>v.<br><br>**THE APPROVAL DEPARTMENT, LLC, d/b/a BREEZE FINANCIAL,**<br><br>    *Defendant*. | Civil Case No.: 1:25-cv-20157<br><br>**AMENDED COMPLAINT - CLASS ACTION** |

## INTRODUCTION

1.  This action arises out of the marketing practices of Defendant, The Approval Department, LLC, d/b/a as Breeze Financial ("Defendant" or "TAD") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

2.  Defendant makes, or has made on its behalf, telemarketing calls soliciting its financial products and services.

3.  Defendant makes these calls to individuals whose telephone numbers are registered on the National Do-Not-Call Registry ("DNC").

4.  Accordingly, Plaintiff Michael Laughlin ("Plaintiff" or "Mr. Laughlin") brings this action on behalf of himself and classes of similarly situated individuals.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

6.  This Court has jurisdiction over Defendant because Defendant, conducts business transactions in this District and has committed tortious acts in/from this District, including the

transmission of the unlawful telephone solicitations within this District.

7. Venue is proper in this District because some of the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from Defendant and to consumers, including Plaintiff, in this District.

**PARTIES**

8. Plaintiff is, and at all times mentioned herein was, a citizen and resident of Lincoln, Nebraska.

9. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

10. Based upon good faith investigation of counsel Defendant is, and at all times mentioned herein, is and was, a Nevada limited liability company with a principal address at 4509 Simple Promise Court, Las Vegas, Nevada 89130.

11. Upon information and belief, Defendant does business under the unregistered fictious name of "Breeze Financial, Inc." in an effort to conceal its illegal marketing practices. [1]

12. Defendant represents to the public, and represented to Plaintiff, that it was operating as Breeze Financial with a principal place of business located at 66 W. Flagler Street #901, Miami, Florida 33130.

13. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

14. Defendant is owned, managed and operated by Jean-Luc Fellous and Fabrice Fellous.

---

1. Plaintiff has conducted a search for entities registered to do business in the state of Florida under the name "Breeze Financial, Inc." and has not identified any specific entity.

2

## **TCPA BACKGROUND**

15. In 1991, Congress enacted the TCPA to combat the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

### *National Do-Not-Call Registry*

16. The TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

17. These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1-2).

18. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

19. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

### *Vicarious Liability*

20. A person or entity is liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding

declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

21. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is deemed to have initiated the call through the person or entity that actually placed the call.

## FACTUAL ALLEGATIONS

**Facts Regarding Defendant.**

22. Plaintiff's original Complaint named Breeze Financial, Inc. as the corporate Defendant who initiated the unlawful calls to Plaintiff.

23. Plaintiff named Breeze Financial, Inc. as the appropriate Defendant because, as alleged more fully below, Defendant identified itself as Breeze Financial Inc. to Plaintiff in an active effort to conceal its true identity – presumably, to avoid liability for the unlawful telemarketing and TCPA violations it was committing.

24. Prior to filing the original Complaint Plaintiff conducted a diligent search for entities registered to do business in the state of Florida under the name "Breeze Financial, Inc." but Plaintiff was not able to identify any specific entity using that name.

25. Concurrently with the filing of the original Complaint, Plaintiff filed a motion to permit early third-party discovery to aid in identifying and serving the appropriate corporate Defendant.

26. With leave of Court, Plaintiff served various third-party subpoenas, including to the landlord for the physical address that "Breeze Financial" was holding itself out as its principal place of business.

27. Plaintiff also served several subpoenas to telecommunication providers and other vendors.

28. As a result of these subpoenas and Plaintiff's continued investigation, Plaintiff has discovered that The Approval Department, LLC is the company associated with the telephone numbers and source of the calls that called Plaintiff that are the subject of this litigation.

29. Specifically, a subpoena was served on Third Base International Telecom, a telecommunications service provider, who identified The Approval Department, LLC as its customer associated with the telephone numbers that called Plaintiff. Third Base International Telecom also advised that the contact for the account was Fabrice Fellous. Third Base International Telecom also produced a call log showing all of the calls Defendant placed to Plaintiff using the telephone number Third Base International Telecom leased to Defendant.

**Facts Regarding Plaintiff and the Unwanted Calls He Received.**

30. Mr. Laughlin is the regular and primary user and subscriber of a personal residential cellular telephone number ending in 1644.

31. Mr. Laughlin's cellular telephone number ending in 1644 is used for residential purposes.

32. Mr. Laughlin's telephone number ending in 1644 has been on the National Do-Not-Call Registry since February 21, 2017.

33. In approximately November of 2024, Mr. Laughlin began receiving telemarketing calls made by or on behalf of Defendant soliciting him for loans.

34. These calls all came from changing ten-digit numbers. For example, from November 18, 2024, to January 3, 2025, Plaintiff received at least 14 calls as follows:

   a. 11/18/2024 from 949-332-8808;

   b. 11/18/2204 from 949-332-8805;

   c. 11/19/2024 from 949-332-8817;

   d. 11/19/2024 from 949-332-8797 (twice);

   e. 11/20/2024 from 949-332-8805;

   f. 11/20/2024 from 949-332-8815;

   g. 11/20/2024 from 949-332-8817;

   h. 11/21/2024 from 949-332-8817;

   i. 11/22/2024 from 949-332-9905;

   j. 11/22/2024 from 949-332-8815;

   k. 11/25/2024 from 949-332-8805;

   l. 12/2/2024 from 949-332-8808;

   m. 12/18/2024 from 949-332-8817;

   n. 12/19/2024 from 949-332-8818;

   o. 01/03/2025 from 949-332-8823;

   p. 1/14/2025 from 949-332-5687;

   q. 1/14/2025 from 949-325-9062;

   r. 1/15/2025 from 949-208-0982;

   s. 1/15/2025 from 949-332-8808; and

   t. 1/16/2025 from 949-384-3760.

35. Plaintiff repeatedly advised Defendant that he was not interested and asked Defendant to stop calling.

36. Plaintiff called into Defendant on at least November 22, 2024 and requested Defendant to cease calling him.

37. Defendant did not comply with Plaintiff's do-not-call requests and Defendant continued to call Plaintiff.

38. In an effort to get the calls to stop, and to identify Defendant, Plaintiff answered a call on December 2, 2024 and engaged with Defendant's representative, "Sean Gardner."

39. During the call, Plaintiff requested that Mr. Gardner send him information about the services.

40. Defendant's representative sent Plaintiff an email following the call:

> From: Sean Gardner <sean@breezefinancialinc.com>
> To: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
> Sent: Monday, December 2, 2024 at 04:00:24 PM CST
> Subject: Sean - Breeze Financial (Requesting For The Bank Statements)
>
> Good Afternoon,
>
> Thanks for taking the time to speak with me earlier.
>
> In order to proceed with your loan application, please send over 4 months of your most recent banking statements, especially from **August 2024 to November 2024 & the account activity from 1st December till today in .PDF format.**
>
> Once I have those in, I'll take a look at your deposits, revenue, daily balances, trends, etc. After that, our underwriting team will determine if you do qualify or not. If you do qualify, you will receive an offer from me - if you are good with the offer, we can fund you within 48 hours from the time you receive the offer from me. If, for some reason, you don't get approved for the amount you are requesting, I will check for the amount closest to the requested amount.
>
> You can reply to this e-mail with **4 months of your most recent banking statements**.
>
> Note: I will send the application form in a separate e-mail. You can look for the subject line: **Funding Application by Sean.**
>
> --
> Thank You,
> **b BREEZE FINANCIAL**
> Sean Gardner | Executive Business Advisor
> Breeze Financial Inc | A+ BBB Rated
> 66 W Flagler St STE 901 | Miami | FL | 33130-1807
> Direct: (786)766-4241 | Mobile: (786)766-4241
> Fax: (856)807-5529
> Email: Sean@breezefinancialinc.com
> Web: www.breezefinancialinc.com
> [This message is intended for the named person's use only. It may contain confidential, proprietary or legally privileged information. If you receive this message in error, please immediately delete it and all copies of it from your system, destroy any hard copies of it and notify the sender. You must not, directly or indirectly, use, disclose, distribute, print, or copy any part of this message if you are not the intended recipient. The Host System reserves the right to monitor all e-mail communications through its networks. Any views expressed in this message are those of the individual sender, except where the message states otherwise and the sender is authorized to state them to be the views of any such entity.]

41. Based on undersigned counsel's investigation, the address 66 West Flagler Street, Suite 901, Miami Florida, 33130, is the address for a professional workspace offering shared office space/co-working space that is operated by Starthub Miami.

42. Upon information and belief, Starthub Miami has in its possession information regarding the identity of Breeze Financial, Inc., its tenant, as well as information regarding its officers, agents and business.

43. Plaintiff served a third-party subpoena upon Starthub Miami. Starthub Miami has stated that it does not have a tenant named or associated with Breeze Financial, Inc., or Sean Gardner.

44. Upon information and belief, Starthub Miami responded in such a manner because Defendant leases office space under some other fictious name in order to conceal its illegal telemarketing operation.

45. Defendant uses the website www.breezefinancialinc.com.

46. Since this lawsuit has been filed, Defendant deleted its website

47. Based on undersigned counsel's investigation, NameCheap is the domain registrar of Defendant's website.

48. Upon information and belief, NameCheap has in its possession information regarding the identity of Breeze Financial, Inc., its customer, as well as information regarding its officers, agents and business.

49. Plaintiff served a third-party subpoena upon NameCheap. NameCheap did not produce any user or account holder named or associated with Breeze Financial, Inc. or Sean Gardner. Instead, the Breeze Financial, Inc. website appears to have been registered by a third-party marketing company located in Bangladesh.

50. Indeed, Defendant has gone to extreme lengths to conceal its true identity and avoid responsibility for its unlawful telemarketing. But for Plaintiff's continued investigation, Defendant's identity would not have been discovered.

51. Plaintiff did not provide his consent to receive these calls from Defendant.

52. Defendant's records or the records of third parties will reveal all of the calls Defendant made, or had made, to Plaintiff.

53. Defendant's violations were, at a minimum, negligent.

54. Alternatively, Defendant's violations were willful and knowing because Defendant was aware of the TCPA, including the prohibitions against placing calls to telephone numbers on the DNC registry, before placing the calls to Plaintiff, yet it chose to place them, or failed to instruct its telemarketers to not place them, to Plaintiff.

55. Plaintiff was the subscriber or customary user of his cellular telephone number that Defendant called and is financially responsible for the phone service, including the cellular costs and data usage incurred as a result of the calls made to Plaintiff by Defendant.

56. The telemarketing calls at issue caused Plaintiff and putative Class Members harm. In addition to using their cellular data, storage, and battery life, they suffered invasion of privacy, aggravation, annoyance, frustration, distraction, and their seclusion was intruded upon, forcing them to divert attention away from their work, home life and other activities, inconvenience, wasted time, risk of future harm, causing disruption to their work, sleep, and other activities, and violations of their substantive statutory rights under the TCPA to remain free of unsolicited telemarketing calls. The calls are a disruptive nuisance. *See Drazen v. GoDaddy.com, LLC,* No. 21-10199 (11th Cir. July 24, 2023 (en banc) ("A plaintiff who receives an unwanted, illegal text message suffers a concrete injury"); *See Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact".... "[A] small injury… is enough for standing purposes");*See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

## DEFENDANT'S LIABILITY

57. Defendant makes, directly or through persons on its behalf, telephone solicitation calls, to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National DNC Registry.

58. For example, the popular consumer site "Trustpilot"[2] demonstrates multiple consumer complaints about its telemarketing operation:



59. Defendant made two or more telephone solicitations to Plaintiff, whose number was on the National DNC Registry at the time of the calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

60. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Mr. Laughlin is entitled to $500 per call through 47 U.S.C. § 227(c).

---

[2]. <https://www.trustpilot.com/review/breezefinancialinc.com?stars=1> (last accessed Jan. 7, 2024).

61. Mr. Laughlin is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

## CLASS ACTION ALLEGATIONS

62. Mr. Laughlin brings this action under Fed. R. Civ. P. 23 on behalf of the "Class" defined as follows:

> All persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls in a 12-month period when the telephone number to which the telephone calls were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls, from four years prior to the filing of the Complaint through the date of class certification.

("Registry Class")

63. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

64. The Members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

65. The exact number and identities of the persons who fit within the Class are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

    a. The time period(s) during which Defendant made its calls;

    b. The telephone numbers to which Defendant called;

    c. The telephone numbers for which Defendant had prior express written consent;

    d. The purposes of such calls; and

    e. The names and addresses of Class members.

66. The Class is comprised of hundreds, if not thousands, of individuals.

67. There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

    a. Whether Defendant (or someone acting on its behalf) makes telemarketing calls;

    b. Whether Defendant (or someone acting on its behalf) obtains prior express written consent for the telemarketing calls;

    c. Whether Defendant or the entity with which it contracts makes solicitation calls to telephone numbers registered on the National Do-Not-Call Registry;

    d. Whether Defendant's statutory violations were willful and knowing; and

    e. Whether Defendant should be enjoined from engaging in such conduct in the future.

68. Plaintiff is a member of the Class in that Defendant made two or more calls for telemarketing purposes, in a one-year period to his telephone number, without his prior express written consent, while his telephone number was on the National DNC Registry.

69. Plaintiff's claims are typical of the claims of the Members of the Class in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

70. Plaintiff and all putative Members of the Class have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Class spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

71. Plaintiff has no interests antagonistic to, or in conflict with, the Class.

72. Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent him and the Class.

73. Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

74. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

75. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

76. Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the Class)**

77. Plaintiff and the proposed Class incorporate the allegations contained in Paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78. Defendant made, or had made on its behalf, calls constituting telephone solicitations to Plaintiff's and putative Class Members' telephone numbers.

79. Plaintiff's and putative Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

80. Plaintiff and putative Class Members each received two or more such calls in a 12-month period.

81. Plaintiff and putative Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

82. Plaintiff and putative Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as the representatives of the Class and appointing his counsel as Class Counsel;

B. An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages of $500 per call per violation of the TCPA;

E. An award of treble damages of $1,500 per call per violation of the TCPA that is found to be willful or knowing;

F. An award of reasonable attorneys' fees and costs, as permitted by applicable law including under the FRCP 54 and FRCP 23, and decisional law interpreting same;

G. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: February 27, 2025                                        Respectfully submitted,

*/s/ Joshua Eggnatz*
Joshua H. Eggnatz, Esq.
Florida Bar No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar. No.: 83397
**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, Florida 33314
Tel: (954) 889-3359
Jeggnatz@justiceearned.com
MPascucci@JusticeEarned.com
SGizzie@JusticeEarned.com
